Filed 3/25/21  P. v. Garcia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN JOSEPH GARCIA,<br><br>    Defendant and Appellant. | F078120<br><br>(Super. Ct. No. 1462330)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Joseph R. Distaso, Judge.

Kieran D.C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Kenneth N. Sokoler and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Steven Joseph Garcia (defendant) appeals from a judgment of conviction in a case arising from his use of a gun during an argument with a group of men. He was sentenced to over 14 years in prison for committing assault with a firearm and other crimes. His sentence included the upper term of 10 years for a firearm enhancement under Penal Code section 12022.5, subdivision (a). (Undesignated statutory references are to the Penal Code.)

Defendant alleges instructional error and sentencing error, raising issues for the first time on appeal despite not making any related objections at trial. We reject his claims. The People assign error to the trial court's stay of punishment for a prior prison term enhancement (see § 667.5, former subd. (b)). By retroactive application of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), the prior prison term enhancement is no longer valid. We will modify the judgment by striking the invalid enhancement and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Walter O. (Walt) was the foreman of a demolition crew hired to remove structures from a dairy farm in Stanislaus County. The property owner had agreed to sell defendant several tons of scrap metal located at the same job site. Defendant was not part of the demolition team, and his efforts to haul the metal away by himself dragged on for more than two weeks. Walt eventually decided to allow the remaining metal to be taken by a man named Frank. The arrangement was brokered by one of Walt's crew members, J.W., who was Frank's neighbor.

On March 28, 2013, defendant got into a heated argument with Walt over the metal. Frank and J.W. were also present. The incident occurred at the demolition site. After being told to "'get out of here,'" defendant retrieved a gun from his vehicle and pointed it at Walt. Defendant later made threatening statements and discharged the firearm, but no one was injured.

2.

Before fleeing, defendant "jumped into" Walt's pickup truck and "ran it full throttle into a dumpster," causing damage to the vehicle and the dumpster.[1] Walt promptly reported the incident to the sheriff's department. However, defendant was not arrested until several months later.

Defendant was charged with making criminal threats (§ 422) against Walt (count I) and Frank (count II), and committing assault with a firearm (§ 245, subd. (a)(2)) against Walt (count III), Frank (count IV), and J.W. (count V). He was also charged with negligent discharge of a firearm (§ 246.3, subd. (a); count VI), auto theft (Veh. Code, § 10851, subd. (a); count VII), receiving a stolen vehicle (§ 496d, subd. (a); count VIII), vandalism (§ 594, subd. (b)(1); count IX) and unlawful firearm possession (§ 29800, subd. (a)(1); count X). Counts I through V included allegations of personal use of a firearm (§ 12022.5, subd. (a)). Defendant was further alleged to have served a prior prison term within the meaning of section 667.5, former subdivision (b).

A jury trial was held in December 2017. Prior to opening statements, defendant pleaded no contest to felony auto theft and felony vandalism as alleged in counts VII and IX. Count VIII was therefore dismissed. (See *People v. Calistro* (2017) 12 Cal.App.5th 387, 395 [dual convictions of taking and receiving the same stolen vehicle are prohibited].)

The People's case consisted of testimony by Walt and Frank. Walt testified defendant aimed a cocked revolver at his head while standing approximately four feet away from him. Walt's dog entered the area and brushed up against Walt's legs, at which point defendant lowered the gun and fired a shot. Walt estimated the bullet missed his leg and the dog by a margin of six inches. Next, defendant "pulled the gun back up,

---

[1]The quoted language is taken from Walt's testimony at the preliminary hearing. Because defendant pleaded no contest to charges based on his unauthorized use of Walt's vehicle, those events were not discussed in front of the jury at trial.

cocked it one more time," pointed it at Walt's face, and threatened to kill Walt and his dog.

Frank's testimony added two key details to Walt's version of events. First, he alleged defendant had also threatened to kill him and J.W. Second, he claimed defendant had "swung," i.e., pointed, the gun at him.

The defense argued Walt and Frank were lying about defendant's use of a firearm. In support of this theory, defense counsel questioned a sheriff's deputy who had investigated the case. The deputy confirmed none of the witnesses had reported seeing a muzzle flash or said anything about the gun's recoil, which counsel argued were details they would have noted if a high-caliber revolver had been fired. Counsel also highlighted the absence of corroborative physical evidence, e.g., gunshot residue on defendant's hands or clothing.[2] As an alternative position, counsel argued the jury's belief in Walt's version of events required it to reject Frank's testimony regarding the alleged threats and assault against him and J.W.

Following the close of evidence, the People moved to dismiss count V for insufficient proof of an assault against J.W. The motion was granted. The jury acquitted defendant on counts II and IV, i.e., the charges involving Frank. Defendant was convicted on all remaining counts and the related firearm allegations were found true. In a bifurcated proceeding, defendant admitted to having served a prior prison term.

Defendant filed a motion for a new trial, which was denied. In September 2018, he was sentenced to an aggregate prison term of 14 years 8 months (sentencing details are provided in the Discussion, *post*). This timely appeal followed.

---

[2]Defense counsel acknowledged it was impossible to know whether gunshot residue evidence had ever existed due to the lengthy interval between the incident and defendant's arrest.

## DISCUSSION

### I.    Instructional Issues

#### A.    Unanimity

To protect a defendant's right to a unanimous verdict, "'if one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act."'" (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.)  "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed …, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  If the circumstances warrant a unanimity instruction, the trial court has a sua sponte duty to give one.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

Following its predeliberation instructions, but before closing arguments, the trial court asked the parties about the need for a unanimity instruction.  Defense counsel requested such an instruction "out of an abundance of caution."  The trial court assented in light of the People's theory that firing a gun in Walt's direction constituted assault with a firearm.  The court noted the mere act of pointing the revolver at Walt's head was enough; it was unnecessary to prove defendant had also shot at him.  (See *People v. Colantuono* (1994) 7 Cal.4th 206, 219; *People v. Miceli* (2002) 104 Cal.App.4th 256, 269.)

During closing argument, the prosecutor said, "[T]here are a couple of different ways that you can conclude that the defendant committed an assault with a firearm.  First of all, by leveling what we know is a loaded gun at Walt[]'s head with the hammer back, that in and of itself is an action that could directly and probably lead to the application of

force to [Walt]. [¶] … [¶] … But there's another way you can get there, and that's the discharge of the firearm itself."

The trial court instructed the jury pursuant to CALCRIM No. 3500. The exact language of the pattern instruction is as follows:

"The defendant is charged with _____ <*insert description of alleged offense*> [in Count ____] [sometime during the period of _____ to _____ ].

"The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

The trial court's instruction said, "The People have presented evidence of more than one act to prove that the defendant committed the offenses of Assault with a Deadly Weapon, Criminal Threats and their lesser offenses. You must not find the defendant guilty of these offenses unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act the Defendant committed."

Defendant argues the trial court should have given separate unanimity instructions for counts I and III instead of referring to both charges in the same paragraph. He claims the altered version of CALCRIM No. 3500 "failed to clearly inform the jury that it had to unanimously agree on *each* act which it chose as the factual basis for each of the distinct charges." He further contends "[t]here is no way to unscramble how the jury understood this instruction and it cannot be deemed to have served its intended function."

Defendant concedes the instruction "was given in the approved [CALCRIM] form," which raises the question of forfeiture. "Failure to object below to an instruction correct in the law forfeits the claim on appeal." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 559.) "If defendant believed the instruction was unclear or incomplete,

6.

he had the obligation to request clarifying language." (*People v. Johnson* (1993) 6 Cal.4th 1, 53.)

We would reject the claim as forfeited if not for defendant's further contention "that an enhancement requires a specific and distinct unanimity instruction." In essence, he alleges the trial court had a sua sponte duty to instruct on unanimity as to the acts supporting each firearm use enhancement. He made the same argument in his motion for a new trial. Because the issues are intertwined, we will address both aspects of the claim.

Defendant argues the trial court's version of CALCRIM No. 3500 "allowed the jury to convict on two counts based on any one act showed by the evidence." Under this hypothesis, the jury may have reasoned it could convict defendant of assault with a firearm so long as it unanimously agreed on one act supporting the criminal threats charge, e.g., defendant's verbal threat to kill Walt. Likewise, if the jury's verdict on count III was based on defendant's firing of the gun, it may have concluded no further consensus was required to find him guilty of criminal threats. We are not persuaded.

"In assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled." (*People v. Tate* (2010) 49 Cal.4th 635, 696.) "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) In addition to the challenged instruction, the jury received CALCRIM No. 3515, which said, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." The jury was also instructed pursuant to CALCRIM No. 3550, which stated, in relevant part: "Your verdict on each count and any special findings must be unanimous. This means that, to return a verdict, all of you must agree to it."

Read together, the instructions explained there were different elements for each offense, each count needed to be evaluated separately, and unanimity was required for all

verdicts. Defendant insinuates the jury was misled to believe it could rely on the elements of *count VI* (negligent discharge of a firearm) to render verdicts on counts I and III, but the unanimity instruction was expressly tailored to the charges of criminal threats and assault with a firearm. Defendant's theory of juror confusion is at odds with the presumptions regarding a jury's ability to understand and follow interrelated instructions. We conclude the trial court did not err by referencing two separate charges in the CALCRIM No. 3500 instruction.

The second part of defendant's claim relies on language in *People v. Robbins* (1989) 209 Cal.App.3d 261: "'A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged.' [Citation.] *The same reasoning should*, *in general*, *apply to enhancements as well as the crimes that underlie them.*" (*Id*. at p. 265, italics added.) Defendant concedes the italicized statement is dictum. The *Robbins* court rejected the appellant's claim of instructional error (*id*. at pp. 265–266), and we are not aware of any authority imposing a sua sponte duty to give a unanimity instruction for enhancement allegations. No such pattern instructions exist.

Firearm enhancement allegations were made in connection with counts I and III pursuant to section 12022.5, subdivision (a). Personal use of a firearm "means to display a firearm in a menacing manner, to intentionally fire it, [and/or] to intentionally strike or hit a human being with it …." (§ 1203.06, subd. (b)(2).) The jury was instructed on the qualifying acts pursuant to CALCRIM No. 3146. Defendant argues some jurors may have based their enhancement findings on his display of the revolver, while others may have relied on the fact the gun was fired. However, the theory of error depends on his claim the trial court's CALCRIM No. 3500 instruction was "defective."

We have determined the jury was properly instructed on the unanimity requirement for the substantive offenses. Presuming the jury understood and followed all instructions, it must be assumed there was a consensus regarding the actus reus of each

8.

crime. Thus, for example, if the jury based the aggravated assault verdict on defendant's display of the revolver, it must have unanimously agreed on at least one act constituting his personal use of a firearm.

Furthermore, even if an error occurred, the claim fails for lack of prejudice. "There is a split of opinion in the appellate courts as to whether the *Chapman* standard or *Watson* standard for harmless error applies in a unanimity instruction case." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576, referencing *Chapman v. California* (1967) 386 U.S. 18 and *People v. Watson* (1956) 46 Cal.2d 818.) We see no prejudice under either standard.

When a defendant relies on "the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 577.) Put differently, "Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853; see *People v. Parsons* (1984) 156 Cal.App.3d 1165, 1174 [failure to provide unanimity instruction held harmless where "appellant was unable to proffer any defense, but merely put the People to their proof"].)

Defense counsel argued that Walt and Frank conspired to steal defendant's metal and "concocted" a story about a gun "to cover their thievery." Alternative theories were offered for the charges involving Frank. However, as to the charges involving Walt, the defense position was defendant neither used *nor possessed* a firearm during the incident. Defense counsel was emphatic: "Did anyone ever mention anything about any muzzle flash? No. Because it didn't happen. Because there was no firearm even there. Because no bullet was fired." Here is another example: "Ladies and gentlemen, I submit to you … there was no gun, there was no firearm there."

9.

The verdicts on counts I, III, VI, and X (felon in possession of a firearm), and the firearm enhancement findings, show the basic credibility dispute was resolved against defendant. "The jury obviously did not believe the only defense offered by defendant. Thus, there is no reason to believe that the verdict was not unanimous." (*People v. Leffel* (1988) 203 Cal.App.3d 575, 587; see *People v. Jennings* (2010) 50 Cal.4th 616, 679 ["There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime"].)

## B.    Failure to Provide a "*McMakin* Instruction"

Defendant claims the trial court had a sua sponte duty to give what he calls a "*McMakin* instruction." (See *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*).) To explain the rather convoluted argument, we must first discuss the applicable law.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "[I]t is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault." (*People v. Chance* (2008) 44 Cal.4th 1164, 1172.) "'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure."'" (*Id*. at p. 1174.)

Section 245, subdivision (a)(2) proscribes assault with a firearm. This aggravated form of assault is a general intent crime. (*People v. Rocha* (1971) 3 Cal.3d 893, 899.) The required mens rea "is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery." (*People v. Colantuono*, *supra*, 7 Cal.4th at p. 214.)

The elements of various section 245 offenses are set forth in CALCRIM No. 875, which was given to the jury in proper form. However, the instruction does not plainly state the holding of *McMakin*, i.e., that "presenting a gun at a person who is within its range" can establish the actus reus of assault with a firearm. (*McMakin*, *supra*, 8 Cal. at p. 548; accord, *People v. Colantuono*, *supra*, 7 Cal.4th at p. 219.) "To point a loaded gun

10.

in a threatening manner at another (especially if accompanied by threats to shoot, as here) constitutes an assault, because one who does so has the present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury." (*People v. Miceli*, *supra*, 104 Cal.App.4th at p. 269.)

The prosecutor discussed the *McMakin* principle during closing argument. Defendant complains none of the instructions allowed the jury to confirm the prosecutor's explanation of the law was correct. "It is settled that, even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) As such, defendant submits the trial court erred by not providing a special instruction "on pointing a loaded gun as [a] distinct legal form of assault."

Defendant's theory of error is relatively straightforward, but his prejudice argument is not. He relies on the false premise that firing his revolver did not qualify as assault with a firearm because he aimed away from Walt and, therefore, "[Walt] getting hit was not a natural and probable consequence of [defendant's] discharge of the gun." Defendant argues the evidence supported a conviction under the *McMakin* principle but was insufficient under a theory based on his discharge of the firearm. In his words, "the act of discharging could not support the assault charge as a matter of law." Ergo, according to the argument, the jury likely relied on an untenable theory of guilt.

Firing a gun in the direction of another person can be a violation of section 245, subdivision (a)(2). (See *People v. Rivera* (2019) 7 Cal.5th 306, 333; *People v. Steele* (2000) 83 Cal.App.4th 212, 218; *People v. Escarcega* (1974) 43 Cal.App.3d 391, 398.) The statute "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." (*People v. Williams* (2001) 26 Cal.4th 779, 790.) "[A] defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would

11.

find that the act would directly, naturally and probably result in a battery." (*Id*. at p. 788, fn. 3.) In *Williams*, the appellant's firing of a "warning shot" toward the victim's truck with knowledge the victim "was in the near vicinity" sufficiently demonstrated "that his act by its nature would directly, naturally and probably result in a battery." (*Id*. at p. 790.)

There was evidence defendant intentionally fired away from Walt and only meant to scare him. However, Walt estimated the bullet missed him by six inches. It was for the jury to decide whether discharging the firearm at such close range was an act that "by its nature would directly, naturally and probably result in a battery." (*People v. Williams*, *supra*, 26 Cal.4th at p. 790.) The evidence permitted the jury to convict defendant based on the legal principles explained in CALCRIM No. 875. (See *Williams*, at pp. 782–783, 790 [victim was within a few feet of where shotgun pellets from the "warning shot" landed].) The alleged error in failing to instruct on the *McMakin* holding was therefore harmless under any standard of prejudice. Given the evidence of defendant's threatening display of a loaded gun, providing such an instruction would have *increased* the likelihood of conviction and the verdict undoubtedly would have been the same.

## II. Sentencing Issues

### A. Additional Background

Defendant was released on bail following his arrest but repeatedly failed to appear for pretrial hearings. In May 2017, a bail bondsman surrendered defendant to custody, reportedly because defendant had been out of contact and unreachable for over two months. In November 2017, after what defense counsel described as "very intense" settlement negotiations, the parties came close to reaching a plea agreement. The People's final offer was reportedly for an aggregate 10-year prison term with the possibility of parole after five years. Defendant conditioned his acceptance of the offer

on the trial court granting him a temporary release from confinement so he could visit his ailing father in the hospital.

On November 30, 2017, defendant's request for a temporary release was denied. The trial court cited, in detail, the history of defendant's failure to appear as the basis for its ruling. The prosecutor reportedly kept the plea offer open until jury selection, which began on December 5, 2017, and concluded the following day. Defendant elected to proceed with the trial.

On September 6, 2018, defendant was sentenced to an aggregate prison term of 14 years 8 months, with eligibility for time credits limited to 15 percent of the total sentence. The People had requested an aggregate term of 16 years 4 months. Defendant had requested an aggregate term of four years eight months.

The sentence was calculated using assault with a firearm as the principal offense, for which defendant received the upper term of four years. The upper term of 10 years was imposed for the related firearm enhancement (§ 12022.5, subd. (a)), to be served consecutively along with an additional eight months (one-third of the middle term) for the auto theft conviction (count VII). Concurrent sentences were imposed for the remaining counts. Punishment for count VI (negligent discharge of a firearm) was stayed pursuant to section 654. The trial court also ordered a stay of the one-year prior prison term enhancement.

The following record excerpts are relevant to defendant's claims of sentencing error:

> "THE COURT:  All right.  The Court's going to sentence as follows: [¶] I want to make sure I have all the counts before I do this, so I have to pull those up.
>
> "So the thing is, there's a lot of factors in aggravation here. [Defendant] has a very lengthy criminal history, and he has multiple commitments to state prison.  There is the one prison prior that's at issue.  I didn't find really any mitigating factors.  I mean, the event was very

13.

serious. I'm going to sentence [defendant] to a total of 14 years and 8 months in the state prison. It's going to be served at 85 percent.

"The Court gets there this way: I'm going to sentence for the Count [III], the 245(a)(2), the aggravated term. That term is—the incident's very serious, and the defendant's record is very lengthy, and there were no mitigating factors that the Court could find in this. It was an argument over some metal. All [defendant]—all you had to do was just get in your truck and head out of there. But you got angry and then this happened. [¶] So, anyway, we're here, we are where we are.

"And on the 12022.5 [enhancement], the use of a firearm, I'm going to sentence him to the aggravated term because the gun was placed twice in [Walt's] face. The aggravated term is ten years. Twice it was placed in [Walt's] face. And even though the testimony at trial was it was moved off of [the complaining witnesses], it was fired about six inches away from [Walt] right over the back of his dog. I mean, there was an argument that that was just to scare them; however, it was clear the natural and probable consequence of firing a firearm six inches from a human being is that someone's going to get hit. So I find that situation very aggravating. So I'm going to sentence him to the aggravated term for the 12022.5(a), ten years.

"The other—how we get to the eight months is the [auto theft, Vehicle Code section] 10851, I also find it deserves a consecutive term because basically [defendant] just drove [Walt's] vehicle just out of anger again and damaged it for no reason. I mean, literally, there's no reason for any of this to have occurred. And so I think that deserves a consecutive term."

**B.** *Apprendi* **Claim**

"Under the Sixth Amendment to the United States Constitution, as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), any fact, other than the fact of a prior conviction, that increases the statutorily authorized penalty for a crime must be found by a jury beyond a reasonable doubt." (*People v. Gallardo* (2017) 4 Cal.5th 120, 123.) Defendant argues the trial court violated *Apprendi* by imposing the upper term for the firearm enhancement "because the gun was placed twice in [Walt's] face." Since the verdicts do not conclusively establish more than one such act of pointing the gun, defendant argues the trial court impermissibly relied on a fact not found by the

14.

jury. Assuming, arguendo, it was not forfeited by a failure to object below, this claim fails on the merits.

In *People v. Black* (2007) 41 Cal.4th 799 (*Black*), the California Supreme Court held "that as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (*Id*. at p. 812.) As discussed in *Black* and reiterated in cases such as *People v. Scott* (2015) 61 Cal.4th 363, "[t]he *Apprendi* rule does not apply to 'the fact of a prior conviction.'" (*Scott*, at p. 405, quoting *Apprendi*, *supra*, 530 U.S. at p. 490.) "[A]ggravating circumstances based on a defendant's criminal history that render the defendant eligible for the upper term include a trial court's finding that the defendant suffered a prior conviction (*Black*, […] at pp. 818–820); that the defendant suffered prior convictions that are numerous or increasingly serious (*ibid*.); that the defendant was on probation or parole at the time the offense was committed [citation]; and that the defendant performed unsatisfactorily while on probation or parole to the extent such unsatisfactory performance is established by the defendant's record of prior convictions." (*Scott*, at p. 405.)

The fact defendant had suffered prior convictions was established by the jury's verdict on count X (felon in possession of a firearm) and confirmed when he admitted the truth of the prior prison term allegation. His criminal history, according to the record, included several felonies and over 20 misdemeanors dating back to 1988. He was on probation when he committed the crimes in this case. Recidivism was a point of emphasis in the probation report, e.g., "The defendant has consistently committed crimes for almost 30 years resulting in numerous commitments to both county jails and the California Department of Corrections and Rehabilitation.… [¶] Having been on

15.

probation and parole for nearly 30 years has clearly not been enough of an incentive for him to rehabilitate himself and become a law-abiding citizen."

Defendant's reliance on *People v. Boyce* (2014) 59 Cal.4th 672 (*Boyce*) is misplaced. There, *Apprendi* error was found under circumstances deemed factually distinguishable from those in *Black*. (*Boyce*, at pp. 727–728.) Although "the probation report listed several aggravating factors stemming from [the appellant's] criminal history," the sentencing court "did not expressly find any of those factors true." (*Ibid.*) The appellant had suffered prior convictions, but "the court did not find an aggravating circumstance based on these prior convictions." (*Id.* at p. 728.) "The only aggravating circumstance found by the trial court to make [the appellant] eligible for the upper term was that [the victim] was particularly vulnerable," which had neither been found by the jury nor admitted by the appellant. (*Ibid.*)

Here, unlike in *Boyce*, factors in aggravation upon which the trial court relied in making its sentencing choices included defendant's "very lengthy criminal history" and "multiple commitments to state prison." This made defendant eligible for upper term sentencing. (*Black*, *supra*, 41 Cal.4th at p. 812.) Therefore, the consideration of additional factors not necessarily established by the verdicts did not violate defendant's constitutional right to a jury trial. (*Ibid.*; *People v. Scott*, *supra*, 61 Cal.4th at p. 405.) In other words, there was no violation of the *Apprendi* rule.[3]

---

[3]Several pages of the parties' briefing are devoted to sections 1170, subdivision (b), and 1170.1, subdivision (d), which were amended long before defendant's trial to eliminate *Apprendi* issues associated with a trial court's selection of an upper term when imposing a determinate sentence. (See *Boyce*, *supra*, 59 Cal.4th at p. 726, fn. 30.) Under the latter provision, aggravating circumstances are not required for imposition of the upper term on an enhancement; trial courts instead have discretion to "impose the term that best serves the interest of justice." (§ 1170.1, subd. (d).) In light of pending changes to these statutes, which are scheduled to take effect January 1, 2022, defendant argues the provisions are unconstitutional as applied to him and other similar situated individuals. Because we are disposing of the claim on other grounds, we do not reach these issues.

In secondary arguments, defendant alleges improper dual use of the same aggravating facts. All such claims were forfeited and will not be considered. A defendant "may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons ….'" (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.)

### C. Alleged Abuse of Sentencing Discretion

Defendant's final claim alleges "judicial vindictiveness." He argues the trial court imposed a harsh sentence to punish him for exercising his right to a jury trial instead of pleading out of the case. The claim is based on the fact defendant rejected a plea offer of "ten years at fifty percent" but was sentenced to 14 years 8 months "at 85 percent." He contends the disparity is otherwise inexplicable given his partial success at trial.

The People argue defendant forfeited this claim by failing to raise the issue at sentencing. We agree. (See *People v. Williams* (1998) 61 Cal.App.4th 649, 654–656.) "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Claims based on a trial court's alleged failure to properly make discretionary sentencing choices are subject to forfeiture. (*People v. Gonzalez, supra*, 31 Cal.4th at p. 751.) In any event, for the reasons below, the claim would fail even if we were to consider its merits.

Defendant erroneously contends there is a presumption of vindictiveness whenever a trial court imposes a sentence "in excess of that originally *proposed*." (Italics added.) He purports to rely on cases governing sentences imposed after a party has

secured a reversal on appeal. In those situations, a presumption applies if the trial court imposes a sentence greater than that which the defendant originally *received*. (E.g., *Wasman v. United States*, 468 U.S. 559, 564–569; *North Carolina v. Pearce* (1969) 395 U.S. 711, 726 (*Pearce*) ["whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding"].)

The so-called *Pearce* presumption is "only 'premised on the apparent need to guard against vindictiveness in the resentencing process.'" (*Wasman v. United States*, *supra*, 468 U.S. at p. 567, italics omitted.) There is no analogous presumption for sentences exceeding a pretrial plea offer. "[A] trial court's discretion in imposing sentence is in no way limited by the terms of any negotiated pleas or sentences offered the defendant by the prosecution." (*In re Lewallen* (1979) 23 Cal.3d 274, 281 (*Lewallen*).) "The mere fact … that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights." (*People v. Szeto* (1981) 29 Cal.3d 20, 35.) "There must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of [those] right[s]." (*People v. Angus* (1980) 114 Cal.App.3d 973, 989–990; accord, *People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 762.)

None of the trial court's statements were remotely suggestive of vindictiveness. (See *People v. Szeto*, *supra*, 29 Cal.3d at p. 35 [no basis for reversal where "the sentencing judge did not say anything reasonably giving rise to the inference that he was penalizing defendant for exercising his right to jury trial"].) Furthermore, appellate counsel unreasonably assumes the pretrial offer was conditioned upon defendant pleading guilty to all 10 counts and admitting all enhancement allegations. The record citations he

18.

provides do not support this assumption.[4]  Without knowing which charges were attached to the 10-year offer, no meaningful inferences can be drawn from defendant's partial success at trial.  Self-serving conjecture does not satisfy the burden to affirmatively demonstrate reversible error.[5]

## III.  Senate Bill 136

The People argue the trial court erred by ordering a stay of the prior prison term enhancement.  When an allegation based on section 667.5, subdivision (b) is admitted or found true, the trial court must either impose the additional prison term or strike the enhancement.  (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.)  However, effective January 1, 2020, the enhancement is inapplicable to all prior prison terms except those

---

[4]One of the citations is to pages 345–346 of the reporter's transcript, which only undercuts his argument.  There, in the context of a *Marsden* hearing (see *People v. Marsden* (1970) 2 Cal.3d 118) defendant's trial counsel claimed to have warned him that if unsuccessful at trial, defendant might later regret not pleading out for "10 at 50 percent" after serving the first five years of his sentence.  Counsel predicted those feelings of regret would resurface every five years, which in his opinion was "going to happen three times."  In other words, defense counsel's pretrial expectation was that adverse jury verdicts would result in a prison sentence of approximately 15 years.  The estimate proved to be remarkably close to the actual sentence of 14 years 8 months.

[5]We reject defendant's argument that the discussion in *People v. Szeto*, *supra*, 29 Cal.3d at page 35 is dicta, i.e., judicial commentary unnecessary to the decision and therefore not precedential (see *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3).  The *Szeto* appellant claimed "the trial court penalized him for exercising his right to jury trial by imposing a more severe sentence than had been proffered during plea negotiations."  (*Szeto*, at p. 34.)  The high court rejected the claim on two separate grounds.  First, the appellant's argument partially relied on evidence outside of the record on appeal.  (*Id.* at p. 35.)  Second, "even if counsel's allegations were supported by the record, he still would not have stated a claim for relief under *Lewallen* [because] the sentencing judge did not say anything reasonably giving rise to the inference that he was penalizing defendant for exercising his right to jury trial.  The mere fact, if it be a fact, that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights."  (*Ibid.*)  Other appellate decisions have appropriately cited *Szeto* as precedential authority for the quoted principles.  (E.g., *People v. Ghebretensae*, *supra*, 222 Cal.App.4th at p. 762.)

19.

served for a sexually violent offense within the meaning of Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.)

Under the current law, the convictions upon which the prior prison term allegation was based do not qualify for the enhancement.[6] It has uniformly been held, including in cases from this district, that Senate Bill 136 applies retroactively to nonfinal judgments. (E.g., *People v. Winn* (2020) 44 Cal.App.5th 859, 872; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681–682; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342.) Because defendant's appeal was pending when Senate Bill 136 was enacted, the enhancement will be stricken from the judgment.

## DISPOSITION

The judgment is modified to strike the prior prison term enhancement allegation found true under section 667.5, former subdivision (b). As so modified, the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

PEÑA, J.

WE CONCUR:

HILL, P.J.

POOCHIGIAN, J.

---

[6]Defendant admitted serving time in prison for felony convictions of causing bodily injury while driving under the influence of alcohol (Veh. Code, § 23153), resisting an executive officer (Pen. Code, § 69), and escape from custody (*id.*, § 4532).